**NATIONAL COUNCIL OF SAVINGS INSTITUTIONS, Plaintiff,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Defendant.**

Civ. A. No. 85–1451.

United States District Court, District of Columbia.

May 6, 1987.

John D. Hawke, Jr., Arnold & Porter, Washington, D.C., for plaintiff.

Theodore C. Hirt, Dept. Justice, Civil Div., Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

JACKSON, District Judge.

This case presents a challenge from another quarter to certain regulations promulgated by the Federal Deposit Insurance Corporation ("FDIC") respecting the proper relationship between FDIC-insured banks and their securities-dealing "subsidiaries" or "affiliates" which were also the subject of the controversy in *Investment Company Institute v. Federal Deposit Insurance Corporation*, 815 F.2d 1540 (D.C. Cir.1987) (per curiam) (*"ICI"*).

In *ICI* the U.S. Court of Appeals for the District of Columbia Circuit upheld the regulations substantively (as had the district court) against a claim by trade associations of mutual fund companies and investment bankers, i.e., potential competitors of the subsidiary/affiliates, that, to the extent the regulations purported to sanction the securities businesses of subsidiaries or affiliates of FDIC-insured "nonmember" (i.e., nonmembers of the Federal Reserve System) banks at all, the regulations contravened Section 21 of the Banking Act of 1933 (the Glass-Steagall Act, 12 U.S.C. § 378 (1982)) which generally prohibits investment banks and securities dealers from engaging in the commercial banking business and *vice versa*. Here, National Council of Savings Institutions ("NCSI"), a trade association representing approximately 273 FDIC-insured savings banks, including 27 now holding federal charters (and an undetermined number of existing state banks that might apply for them), complains that the regulations exceed FDIC's statutory authority in another respect: they constitute, in effect, "regulation" of the business of those "nonmember" savings banks with federal charters which Congress has committed to another agency, the Federal Home Loan Bank Board ("FHLBB").[1] The FDIC contends that plaintiff is without "standing" to maintain the action (but only in the sense that the dispute is not "ripe," no FDIC-insured savings bank having yet sought to enter the securities business *via* a subsidiary or affiliate)[2], and that the regulations are in any event a necessary incident of its power to terminate a bank's insurance coverage to protect its insurance fund from unsafe and unsound banking practices under Section 2[8](a) of the Federal Deposit Insurance Act of 1933, 12 U.S.C. § 1818(a). The case is now before the Court on the parties' cross-motions for summary judgment. The Court finds the reasoning of the court of appeals in *ICI* to be apposite to

---

1. Federally chartered savings banks that are neither national banks (which are governed by the Comptroller of the Currency) nor members of the Federal Reserve System (which are subject to the jurisdiction of the System's Board of Governors) are "regulated" by the FHLBB. Their deposits are as a rule insured by FHLBB's own Federal Savings and Loan Insurance Corporation ("FSLIC"). Some federal savings banks, however, which began life as state-chartered institutions with FDIC insurance, were allowed by statute to retain their FDIC coverage when they converted to federal charters. The banks find the FHLBB a congenial regulator, but (as the Court was informed at oral argument) its FSLIC insurance is much more expensive than FDIC's.

2. It is undisputed that a trade association has standing to sue on behalf of its members who would themselves have standing. *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 342–43, 97 S.Ct. 2434, 2440–41, 53 L.Ed.2d 383 (1977).

the disposition of both issues, albeit by adaption, and concludes for the following reasons that judgment must be given for defendant.

■ As to NCSI's "standing" here, the Court observes that in *ICI* the court of appeals held an association-representative of prospective competitors of the savings banks' securities-dealing subsidiaries and affiliates to have standing to challenge the regulations (on the ground that they were more permissive than law allowed), because its constituents would suffer competitive injury if and when the savings banks availed themselves of them. Although the court of appeals did not address the issue in terms of "ripeness," a necessary corollary of ICI's standing there is that the association-representative of the savings banks with whose subsidiaries and affiliates ICI's constituents may eventually be competing (and who would be directly affected by the regulations by having to comply with them to enter the competition),[3] must also have standing to challenge the regulations (as too constraining), even if none has as yet undertaken to do so.

■ On the merits, *ICI* is also instructive. The regulations promulgated by the FDIC purport to prescribe the manner in which all "nonmember" FDIC-insured banks (including the federally chartered savings banks under the FHLBB's regulatory control) may engage in securities business activities through subsidiary/affiliates with minimum risk to their own solvency. The regulations require that securities dealings be conducted only through a "bona fide subsidiary," which must, *inter alia,* have offices physically separate from the bank, have a name different from the bank's, observe all corporate formalities signifying its independence of the bank, maintain separate accounting records, and employ no bank officers or other personnel. The regulations limit the types of securities activities a subsidiary may conduct; they restrict the transactions between the bank and the subsidiary; and they impose an obligation on an FDIC-insured bank to notify the FDIC when it intends to engage in securities activities through a subsidiary. *See generally* 12 C.F.R. § 337.4 (1987).

NCSI contends that such regulations can only be characterized as an attempt at governance which, as to federally chartered savings banks, Congress has entrusted to the FHLBB by Section 112 of the Garn-St. Germain Depository Institutions Act of 1982, Pub.L. No. 97–320, 96 Stat. 1469, 1471–72 (codified at 12 U.S.C. § 1464(*o*) (1982)) (the "Garn Act").[4] The FDIC relies, as noted above, upon its power to terminate a bank's insurance coverage for engaging in "unsafe or unsound [banking] practices" under Section 2[8](a) of the Federal Deposit Insurance Act, codified at 12 U.S.C. § 1818(a), pointing out that the Comptroller of the Currency has been found to possess authority to give meaning to those same terms by regulation for his purposes and for the edification of the national banks under his supervision. *Independent Bankers Ass'n v. Heimann,* 613 F.2d 1164, 1168–69 (D.C.Cir.1979), *cert. denied,* 449 U.S. 823, 101 S.Ct. 84, 66 L.Ed.2d 26 (1980). NCSI correctly points out in response that federally chartered savings banks are *not* subject to the FDIC's general supervision, as the national banks are to the Comptroller's.

The court of appeals, too, was confronted with arguably inconsistent statutory provisions in *ICI,* and in resolving the conflict adverted to "a venerable line of precedent counseling judicial deference toward an agency's evaluations of the statutes that give it legal life and authority," slip op. at

---

**3.** *Cf. Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

**4.** 12 U.S.C. § 1464(*o*) provides in pertinent part:
   Notwithstanding any other provision of this section, the [Federal Home Loan Bank] Board, subject to the provisions of this subsection, may ... provide for the organization, incorporation, operation, examination, and

regulation of [FDIC-insured federal savings banks].
   The Federal Deposit Insurance Corporation shall insure the deposit accounts of any Federal savings bank chartered pursuant to this subsection, until such time as the accounts of such institution are insured by the Federal Savings and Loan Insurance Corporation.
   . . . .

12, most recently culminating in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), the rule of which it paraphrased as follows:

> If Congress has spoken clearly to the issue presented in a case, that intent controls. [Citation omitted]. If the agency's interpretation is contrary to the clear intent of Congress, the agency's interpretation is invalid. If, on the other hand, Congress had no clear intent as to the particular question at issue, the courts may invalidate the agency's interpretation only if it is "unreasonable" or "impermissible."

*Id.* (Citations omitted). The court of appeals found it unnecessary to resort to agency interpretation in *ICI*, because it was entirely clear to it that, at least with respect to the several provisions of the Glass-Steagall Act the plaintiff thought precluded it, Congress had actually intended the result the regulations contemplated.

Even if the regulations are fully consistent with the Glass-Steagall Act, however, it does not appear with equal clarity to this Court that Congress actually intended the FDIC to issue regulations applicable to federally chartered savings banks at all, particularly where, as here, their primary regulatory authority, the FHLBB, has issued its own regulations on the same subject to which those with FSLIC coverage are expected to adhere.[5] (All that seems clear, in fact, is that Congress intended that pre-existing savings banks taking out federal charters keep their FDIC insurance in force until their FSLIC coverage was in place. *See* S.Rep. No. 536, 97th Cong., 2d Sess. 6–7 (1982), *reprinted in* 1982 U.S. Code Cong. & Admin. News 3054, 3060). But it is similarly unclear that Congress actually intended to *prohibit* FDIC's use of the rulemaking process to declare the conditions upon which its continued insurance coverage depends. And it is still less clear, now that *ICI* has been decided, that Congress intended the anomaly that would result should NCSI prevail here: all FDIC-insured segments of the nation's commercial banking community but the least—the federally chartered savings banks—would follow FDIC rules with respect to securities activities by subsidiary/affiliates; federal savings banks would be accountable only to the FHLBB.

Consequently, as *ICI* instructs, under the *Chevron* rule the Court must accept the FDIC's own interpretation of its statutory authority as encompassing the power to issue these regulations unless it can be said to be unreasonable. And it is obviously not unreasonable to suppose that a securities business conducted by a savings bank's "subsidiary" or "affiliate" could, in certain circumstances, impair its soundness, and, thus, jeopardize the fund by which its deposits are insured, nor that the insurer whose fund is in jeopardy would want to forewarn such a bank, by published rules, just what those circumstances are which would warrant the termination of its insurance in defense of the fund. The FDIC's interpretation of its authority is reinforced, moreover, by that of the FHLBB, which might be expected to demur at the prospect of a sister agency usurping authority it believed Congress to have conferred upon it alone, but has nevertheless agreed with the FDIC. (*See* letter of August 7, 1985, from Chairman Gray (FHLBB) to Chairman Isaac (FDIC), Appendix A to Defendant's Reply Memorandum of September 9, 1985).

This Court concludes, therefore, that the FDIC does possess the authority to promulgate the regulations in dispute, and that they are as applicable to those savings institutions which are now, or may in the future become, otherwise subject to the regulatory jurisdiction of the FHLBB as they are to the remainder of the institutions whose deposits the FDIC presently insures. Accordingly, it is, this 6th day of May, 1987,

ORDERED, that plaintiff's motion for summary judgment is denied; and it is

FURTHER ORDERED, that defendant's motion for summary judgment is granted,

---

**5.** *See* 12 C.F.R. §§ 545.74, 563.37(a), 570.10 (1986).

and the complaint is dismissed with prejudice.